UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
THE CAFÉ FAMILY LIMITED               )        Case No. 05-10301-SSM
PARTNERSHIP                           )
                                      )        Chapter 11
                    Debtor            )


**MEMORANDUM OPINION**


The matter before the court is the objection of the debtor in possession to Claim No.

1 filed by "Mundaca Financial Servicing" in the amount of $193,426.63, as amended by

Claim No. 3 filed by Mundaca Financial Services, LLC, in the amount of $148,838.33.  An

evidentiary hearing was held on May 18, 2006, at which the creditor and the debtor in

possession were each present by counsel.  For the reasons stated, the claim will be allowed,

but in a substantially reduced amount.

<u>Background</u>

The Café Family Limited Partnership ("Café" or "the debtor") is a Virginia limited

partnership.  It filed a voluntary petition for reorganization under chapter 11 of the

Bankruptcy Code in this court on January 28, 2005, and remains in possession of its estate

as a debtor in possession.  Its sole asset consists of two adjacent parcels of land in Jackson

County, North Carolina, which the parties have referred to as the Cullowhee Café property.

The present controversy has its genesis in a $150,000 promissory note and deed of

trust[1] given more than a decade ago by a now-deceased real estate developer, Eugene N.

---

[1]  The deed of trust is dated November 10, 1995, and refers to a $150,000 note "of even
(continued...)

1

Hooper, to a now-disbarred attorney, Ronald B. Patterson, as security for unpaid legal fees,

most of which arose in connection with a bankruptcy case that Hooper had filed in this

court.  Because the underlying facts are complicated, to say the least, the reader is referred to

the memorandum opinion and supplemental opinion previously issued in Hooper's case.  *In

re Hooper*, No. 93-11599-AB, 2001 WL 34054526 (Bankr.E.D.Va., October 29, 2001) and

*In re Hooper*, No. 93-11599-AB (Bankr. E.D. Va., December 4, 2001).

For the purposes of the present ruling, it is sufficient to state that the deed of trust

encumbered the Cullowhee Café property, which was then owned by Hooper; that Hooper

deeded the property in 1998 to the debtor (of which he was the general partner and a 98%

limited partner, with his children holding the other limited partnership interests); that

Patterson commenced foreclosure proceedings against the property in 1999; that after the

note had matured, and while the foreclosure proceedings were pending, Patterson sold the

note and deed of trust in October 1999 to Mundaca Financial Services, LLC;[2] that after the

order of the North Carolina trial court allowing the foreclosure to proceed was affirmed on

appeal,[3] Hooper successfully moved to reopen his bankruptcy case to examine the fees owed

to Patterson; and that this court disallowed all fees connected with the bankruptcy case and

---

[1](...continued)
date."  The note, however, is dated January 10, 1996.

[2]  Mundaca admits, however, that it does not have the original promissory note, and no
evidence was presented at the hearing to account for its loss, destruction, or unavailability.

[3]  Although the note is dated two months after the deed of trust, the North Carolina trial
court found that the substitute trustee under the deed of trust "had the right to foreclose on
the note dated 10 January 1996."  *In the Matter of the Foreclosure of the Deed of Trust of
Eugene Hooper*, No. COA99-1342 (N.C.App., Dec. 19, 2000) at p.2  Hooper's challenge to
this ruling was rejected by the North Carolina Court of Appeals because Hooper had not
made the note and deed of trust part of the record on appeal, and the Supreme Court of
North Carolina denied Hooper's petition for discretionary review.

reformed the promissory note by backing-out the bankruptcy-related fees, leaving a principal

balance of $53,979.16.

When Patterson subsequently sued Hooper in state court for unpaid legal fees,

Hooper counterclaimed for a declaratory judgment that he was entitled to a set-off—based

on a judgment against Patterson that he had purchased at a considerable discount from Riggs

National Bank in March 2000 ("the Riggs judgment")—in an amount sufficient to reduce his

liability on the note to zero.  Hooper died while that litigation was pending, and his estate

was substituted for him.  Patterson non-suited his action, but judgment was entered for the

Hooper estate on the its counterclaim determining that the estate could offset the Riggs

judgment against the full amount this court had found to be due on the promissory note.

Mundaca was not made a party to that litigation.

The present chapter 11 case was filed in response to on-going efforts by Mundaca

(listed on the debtor's schedules as "Mundada [*sic*] Financial Services, LLC") to foreclose

on the property.  A timely proof of claim was filed by "Mundaca Financial Servicing" in the

amount of $193,426.63, to which the debtor in possession objected.  While the objection was

pending, the court entered an order approving the sale of a portion of the Cullowhee Café

property for $825,000 free and clear of liens—specifically including Mundaca's deed of

trust—with the liens attaching to the proceeds of sale.[4]  Following entry of that order,

Mundaca filed an amended proof of claim correcting its name and reducing the amount

claimed to $148,838.33.

---

[4]  A report of sale has been filed reflecting that the sale closed on April 27, 2006, resulting in
net proceeds of $829,296.54.

The beneficiary of Hooper's estate was an entity called the Hooper Family Trust, of which Mr. Hooper's four children are the beneficiaries. After the filing of the chapter 11 petition, the Trust, which now holds both the Riggs judgment against Patterson as well as Hooper's general and limited partnership interests in the debtor, assigned $275,000 of the Riggs judgment to the debtor.

<u>Discussion</u>

I.

A properly filed proof of claim is prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3002(f). For that reason, the party objecting to the claim has the initial burden of presenting sufficient evidence to overcome the prima facie validity. *In re C-4 Media Cable South, L.P.,* 150 B.R. 374, 377 (Bankr. E.D. Va. 1992). Once the objecting party has done so, the ultimate burden of proof is on the creditor to establish the merits of the claim.[5] *Id.* The objection to claim raises a plethora of issues, but only two require extended discussion. The first is the correct amount of the claim prior to any offset. The second is whether the bankruptcy estate is entitled to offset the Riggs judgment against the amount otherwise owed on the note.

II.

As amended, Mundaca's claim is in the amount of $148,838.33, which is calculated as follows:

---

[5] The only exception—not applicable here—is if non-bankruptcy law would place the burden of proof on the objecting party, such as in disputes over tax claims. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct 1951, 147 L.Ed.2d 13 (2000) (finding that burden of production and persuasion on trustee's objection to tax claim is the same in bankruptcy as it would be outside of bankruptcy); *IRS v. Levy (In re Landbank Equity Corp.)*, 973 F.2d 265 (4th Cir. 1992) (holding that debtor-taxpayer has burden of proof on disallowed deductions).

| | |
|---|---:|
| Principal balance | $53,979.16 |
| Interest at 12% from 1/1/96 through 5/4/06[6] | $66,811.00 |
| Prior foreclosure fees and costs | $18,118.53 |
| Trustee's fees | $4,529.64 |
| Late Fees | $5,400.00 |
| Total | $148,838.33 |

While the principal balance is established by this court's order in the Hooper case reforming

the promissory note, the terms of the note (other than its maturity, which is recited in the

deed of trust) are not otherwise before the court.  Mundaca does not have the original note,

and the copy Mundaca attempted to introduce at the hearing was not admitted, because

Mundaca presented no evidence to authenticate it or to account for the destruction, loss, or

unavailability of the original.  Fed.R.Evid. 1003.  To the extent, therefore, that particular

components of Mundaca's claim, such as late charges, are predicated on the terms of the

promissory note, there is simply no evidence of those terms before the court.

Even in the absence of an agreement to pay a specific rate of interest, however,

Mundaca would be entitled to interest at the legal rate.  Va. Code Ann. § 6.1-330.53.  In

1996, when the note was executed, that rate was 8%.[7]  Accordingly, Mundaca would be

entitled to simple interest at the rate of 8% per annum on the reformed principal amount of

$53,979.16.  The daily rate of interest, based on a 365-day year, would be $11.8310.  This

court's opinion in the Hooper case stated that the note was dated January 10, 1996.  Thus,

---

[6] May 4, 2006, is the date the witness and exhibit lists were required to be filed under the terms of the scheduling order entered in connection with the claims objection.

[7] It has since been reduced to 6%.  Acts of Assembly, 2004, ch. 646.

interest would accrue from that date,  and the total interest due as of January 28, 2005, the

date the chapter 11 petition was filed—a total of 3,307 days—would be $39,125.12.[8]

As noted, the claimed late charges will be disallowed because there is no evidence to

support entitlement to them.  The claimed trustee's fees are in a somewhat different posture.

The deed of trust—which *was* admitted in evidence—provides for a trustee's fee of 5% of

the gross proceeds of sale if the property is sold, and for a reduced commission if

foreclosure is "commenced but not completed."  The reduced commission is computed on

5% of the outstanding indebtedness, multiplied by a fraction that varies with how far along

the foreclosure had progressed.  The foreclosure proceedings in this case were commenced

back in 1999, and an order—subsequently affirmed on appeal—was entered that same year

by the Superior Court for Jackson County authorizing a sale.  Under the terms of the deed of

trust, the fraction that applies after the hearing on the right to foreclosure is 3/4.  Thus the

foreclosure trustee would be entitled to a fee of 3/4 times 5% of the outstanding balance of

the note.  Since it was the filing of the chapter 11 petition that prevented the foreclosure

from being completed, the appropriate "outstanding balance" for the purpose of computing

the commission would be the balance existing as of the date of the chapter 11 filing, or

$93,104.28.  This amount, multiplied by three-fourths of 5%, would be $3,491.41.  No

evidence having been presented as to the claimed "prior foreclosure fees and costs," those

sums will be disallowed.

---

[8]  On an objection to claim, the court is required to determine the amount of the claim "as of
the date of the filing of the petition."  § 502(b), Bankruptcy Code.  Because Mundaca's
claim is secured, and because it is undisputed that the Cullowhee Café property is worth
substantially more than the amount due on the claim as of the filing date, Mundaca would
also be entitled to post-petition interest. § 506(b), Bankruptcy Code.

In summary, before considering the claimed set-off of the Riggs judgment, the court

determines that the claim should be allowed in the amount of $96,595.69, plus per diem

interest of $11.8310 from January 28, 2005,  through the date of disbursement:

| | |
|---|---:|
| Principal | $53,979.16 |
| Interest at 8% from 1/10/96 through 1/28/05 | $39,125.12 |
| Trustee's fee | $3,491.41 |
| Total | $96,595.69 |

III.

Regardless of the sum otherwise due on the promissory note, the debtor asserts that it is

entitled—as assignee of $275,000 of the Riggs judgment against Patterson—to offset the

judgment against the note, thereby reducing the secured claim to zero.  The court cannot

agree.

A.

Under the Uniform Commercial Code, as adopted in Virginia, a party may enforce an

instrument if that person is a holder of the instrument, a non-holder in possession of the

instrument who has the rights of a holder, or a person not in possession of the instrument

who is entitled to enforce the instrument as a result of loss, destruction or theft of the

instrument or because of payment or acceptance by mistake.  Va. Code Ann. § 8.3A-301.

The defenses that may be asserted against a party seeking to enforce an instrument depend

on whether the party is a holder in due course.  The holder of an instrument qualifies as a

holder in due course if the instrument is negotiated to him for value, in good faith, and

without notice that it is overdue or has been dishonored or of any defense against or claim to

it on the part of any person. Va. Code Ann. § 8.3A-302.   A holder is due course is subject

only to a defense of the obligor based on the (i) infancy of the obligor to the extent it is a

defense to a simple contract; (ii) duress, lack of legal capacity, or illegality of the transaction

which, under other law, nullifies the obligation of the obligor; (iii) fraud that induced the

obligor to sign the instrument; or (iv) discharge of the obligor in insolvency proceedings.

Va. Code Ann. 8.3A-305(a)(1).  A party who is *not* a holder in due course is subject to those

same defenses but also to certain others, including a defense of the obligor that would be

available if the person entitled to enforce the instrument were enforcing a right to payment

under a simple contract; and a claim in recoupment of the obligor against the original payee

of the instrument if the claim arose from the transaction that gave rise to the instrument.  Va.

Code Ann. §§ 8.3A-305(a)(2)–(3).

## B.

Although Mundaca does not concede the point, no serious argument can be made that

Mundaca qualifies as a holder in due course.  It purchased the note after maturity and with

knowledge that it was in default.  Va. Code Ann. § 8.3A-302.  Thus, enforcement of the note

is subject to any of the defenses specified in § 3A-305 that could have been asserted against

Patterson.  The question is whether set-off, as distinguished from recoupment,[9] is one of

those defenses.

---

[9]  In argument, counsel for the debtor suggested that "recoupment," as used in the statute,
also embraces set-off.  But recoupment, while analogous to set-off, is nevertheless a legally
distinct concept.  In the context of commercial instruments set-off is defined as a demand
held by a defendant against a plaintiff, arising out of a transaction that is extrinsic to the
instrument.  By contrast, recoupment is a demand that arose out of the transaction on which
the instrument itself is based.  *See Stegal v. Union Bank & Federal Trust Co.*, 163 Va. at
445–46, 176 S.E. at 450.  As their definitions suggest, these are separate and distinct
theories.

Under Virginia law this question is answered in the negative.  In *Stegal v. Union Bank & Federal Trust Co.*, 163 Va. 417, 176 S.E. 438 (1934), the Virginia Supreme Court of Appeals found that set-off is not a defense that may be asserted against a negotiable instrument as contemplated by § 58 of the Negotiable Instruments Law.  Although § 58 of the N.I.L. preceded § 8.3A-305 of the Uniform Commercial Code, it is evident that subsection (b) of the latter was intended merely to restate the prior rule. *See* Official Comment 3 to § 8.3A-305.  Accordingly, Virginia law construing § 58, N.I.L. is applicable to cases involving UCC § 305(b) and the Supreme Court's finding that a party may not assert set-off under § 58 applies with equal force when considering § 8.3A-305(b). *See United Overseas Bank v. Veneers, Inc.*, 375 F. Supp. 596 (D. Md. 1974); 3C Michie's Jurisprudence, "Commercial Law" § 64, p. 341, n. 11.  Therefore, Café is precluded from asserting set-off as a defense to the note and deed of trust.

### C.

Café asserts, however, that Mundaca is not only not a holder in due course, it does not even qualify as a holder, since it does not have possession of the original instrument. The statutory definition of  "holder," however, includes a person not in possession of the instrument who is entitled to enforce the instrument as a result of loss, destruction or theft of the instrument or because of payment or acceptance by mistake.  Va. Code Ann. § 8.3A-301. Thus, lack of physical possession does not necessarily prevent a person from being a holder of the instrument. Additionally, this court, in connection with the ruling reforming the note, found that it had been sold to Mundaca.  *In re Claxton*, 32 B.R. 219, 223 (Bankr. E.D. Va. 1983) (court may take judicial notice of evidence in earlier hearing).  But even if Mundaca

were viewed as no more than the assignee of Patterson's claim against Hooper, it by no means follows that the claim is subject to set-off.

The law in Virginia is that the assignee of a contract or other chose in action is subject to all set-offs that may be asserted against his assignor. *Mayo v. Giles*, 15 Va. (1 Munf.) 533 (1810). However, the set-off must be acquired before the knowledge of the assignment. *Spillman v. Payne*, 84 Va. 435, 4 S.E. 749 (1888). The sale to Mundaca occurred in October 1999, and an assignment of the note and deed of trust was recorded in the Jackson County, North Carolina, land records in December 1999.[10]  Hooper did not purchase the Riggs judgment (which he admittedly acquired for the purpose of gaining leverage over Patterson) until March 2000, some three months later. The recording of the assignment would have provided at least constructive knowledge that Patterson's claim had been assigned. It also raises an inference, which the debtor has not rebutted, that Hooper had actual knowledge of the assignment. Thus, even if Mundaca is not a "holder" of the instrument but merely an assignee, the Riggs judgment, since it was acquired after the assignment, cannot be offset against the assigned claim.

---

[10]  At the hearing, Café objected to admission of a certified copy of the recorded assignment (Mundaca Ex. 5) on the ground that it had not been filed and exchanged prior to trial as required by the scheduling order, and that Café would be prejudiced because its attorney had never seen the document before. Based primarily on the latter representation, the court did not admit the exhibit. The court has subsequently discovered, however, that the same attorney expressly referenced the assignment in the order he prepared to approve the sale of the Cullowhee Café property free and clear of liens. Order Granting Motion to Sell (Doc. # 54, entered March 7, 2006) at 4 (describing the Patterson deed of trust as "assigned of record to 'Mundaca Financial Services, L.L.C.,' as per assignment recorded December 13, 1999 at Deed Book 1079."). Because Cafe's attorney clearly had actual knowledge of the recorded assignment, he could hardly claim to have been either surprised or prejudiced by its admission at trial. For that reason, the court reverses its ruling and admits Mundaca Exhibit 5.

Accordingly, a separate order will be entered allowing Mundaca's claim in the reduced amount of $96,595.69, together with interest at the rate of $11.8310 per day from January 28, 2005.

Date: _____

                                             _____
                                             Stephen S. Mitchell

Alexandria, Virginia                            United States Bankruptcy Judge

Copies to:

James M. Towarnicky, Esquire
James M. Towarnicky, PLLC
3977 Chain Bridge Rd., Suite #1
Fairfax, VA 22030
Counsel for the debtor in possession

Roxanne F. Rosado, Esquire
Draper & Goldberg, P.L.L.C.
803 Sycolin Road, Suite 301
Leesburg, VA  20175
Counsel for Mundaca Financial Services, LLC

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314